[Cite as *Medlock v. Brooks*, 2024-Ohio-529.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Stacey Medlock et al., | : | |
| Plaintiffs-Appellees, | : | No. 22AP-726 |
| | | (C.P.C. No. 19CV-1189) |
| v. | : | (REGULAR CALENDAR) |
| Thelma H. Brooks, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 13, 2024

**On brief:** *Onda LaBuhn Ernsberger & Boggs Co., LPA, John P. Miller*, and *Colleen R. Vance*, for appellees. **Argued:** *John P. Miller*.

**On brief:** *Percy Squire Co., LLC*, and *Percy Squire*, for appellant. **Argued:** *Percy Squire*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, P.J.

{¶ 1} Defendant-appellant, Thelma H. Brooks, appeals from the judgment of the Franklin County Court of Common Pleas entered after a jury returned a verdict in favor of plaintiffs-appellees, Stacey and Janet Medlock, on their claims arising from a real estate transaction. For the reasons that follow, we affirm.

{¶ 2} On October 17, 2014, the Medlocks and Ms. Brooks entered into an agreement titled "Lease with Option to Purchase" ("Agreement") concerning residential property at 1695 Penfield Rd., in Columbus, Ohio. (Feb. 2, 2022 Joint Stipulation Ex. A.) Under its terms, the Medlocks agreed to a $10,000 down payment and "monthly installments of $1110.00 per month, until fully paying the settled upon selling price of $79,900 by the termination of the three-year period" of the Agreement on October 17, 2017.

*Id.* However, if the Medlocks declined to exercise this option by its termination date, the Agreement stated that Ms. Brooks would be "entitled to retain the non-refundable consideration" of the down payment and lease payments. *Id.*

{¶ 3} A dispute eventually arose between the parties over the final amount required to exercise the option. The Medlocks filed a complaint against Ms. Brooks on February 8, 2019, stating claims for injunctive relief, declaratory judgment, breach of contract, unjust enrichment, and promissory estoppel. They alleged that the Agreement was a land installment contract under Ohio Revised Code Chapter 5313 and that Ms. Brooks had violated a number of the statute's requirements. (Feb. 8, 2019 Compl. at ¶ 20-22.) The Medlocks also alleged that they and Ms. Brooks had "consented to amending their Agreement" in December of 2017 with terms that would satisfy the purchase price by increasing the monthly payments and making additional regular payments in 2018. *Id.* at ¶ 23-25. They claimed to have paid Ms. Brooks "over 95% of the total purchase price" by August of 2018, at which time they attempted to make arrangements for a final payment and closing. *Id.* at ¶ 29. According to the Medlocks, a representative for Ms. Brooks indicated that the deed would be put in their name after they made the final payment. *Id.* at ¶ 31. In the Medlocks' telling, however, Ms. Brooks attempted to "extort" them by demanding an additional $20,000 above and beyond the purchase price. *Id.* at ¶ 32.

{¶ 4} Ms. Brooks filed an answer with counterclaims alleging that the Medlocks had breached the Agreement and sought their eviction from the premises. (Sept. 26, 2019 Answer & Am. Countercl.)

{¶ 5} The parties filed cross-motions for summary judgment that the trial court resolved in a May 11, 2021 decision. The trial court found that the Agreement did not meet the definition of a land installment contract under R.C. 5313.01. (May 11, 2021 Decision & Entry.) Based upon "the intent of the parties as evidenced in the terms of the Agreement," the trial court concluded that it was a lease with an option to purchase. *Id.* at 10. Accordingly, it granted summary judgment in favor of Ms. Brooks on the Medlocks' declaratory judgment claim that had sought a declaration that the Agreement was a land installment contract. *Id.* at 15.

{¶ 6} The trial court could not resolve the Medlocks' other claims on summary judgment, however. It disagreed with the Medlocks' contention that the undisputed

evidence showed that Ms. Brooks had breached the Agreement by failing to transfer the property to them. *Id.* at 14. The Medlocks and Ms. Brooks had each prepared separate amendments to the Agreement, which "require[d] any amendment to be in writing signed by both parties," but no party had signed the other's amendment. *Id.* Furthermore, there was no evidence submitted in support of the motion showing that the Medlocks had complied with the Agreement's requirement to provide written notice of their intent to exercise the option to purchase before the termination date. *Id.* The unjust enrichment claim was only viable in the absence of a contract between the parties, and the trial court had ruled that the Agreement was a lease with an option to purchase. *Id.* at 14-15. Finding many issues of fact unresolved, the trial court overruled the Medlocks' motion for summary judgment. *Id.* at 15.

{¶ 7} The parties agreed to a trial conducted by a magistrate, which was held from February 14-18, 2022. Apart from a short exchange concerning the jury instructions, the record contains no transcript of the trial proceeding. The jury found in favor of the Medlocks on their breach of contract claim and granted their request for specific performance ordering Ms. Brooks to transfer the property to them. (Feb. 18, 2022 Jury Verdict.) The jury also found in favor of the Medlocks and against Ms. Brooks on her counterclaims for breach of contract and residential eviction. *Id.* Additionally, a series of jury interrogatories found that the Medlocks had paid $79,040.50 of the purchase price; they had paid $9,000 in property taxes; Ms. Brooks had demanded $19,000 to close on the property, which was more than what was due; the Medlocks had substantially performed on the Agreement; Ms. Brooks had waived the Agreement's requirement to exercise the option of delivering a pre-termination written notice stating a valid closing date; the parties had modified the Agreement to not require that notice as a condition precedent to exercise of the option; and Ms. Brooks had breached the Agreement by not transferring the property to the Medlocks. (Feb. 18, 2022 Jury Interrogs.) The trial court entered judgment in favor of the Medlocks on March 11, 2022, ordering Ms. Brooks to transfer title of the property to them within 30 days. (Mar. 11, 2022 Jgmt. Entry.)

{¶ 8} Ms. Brooks filed a motion for judgment notwithstanding the verdict ("JNOV") and for a new trial on April 6, 2022, in which she argued that the jury instructions were inconsistent with the trial court's summary judgment decision, which she described

as the law of the case. More specifically, she argued that the Medlocks had introduced "no evidence whatsoever" at trial to demonstrate that they had exercised the option to purchase before the Agreement's termination or that the parties had amended it, both of which the trial court had described as requirements of the Agreement in its summary judgment decision. (Apr. 6, 2022 Mot. at 11.) The motion criticized the jury instructions describing modification of a contract, describing the instruction as at odds with the summary judgment decision, and characterized this "variation" as "a violation of the law of the case doctrine." *Id*. at 12. Ms. Brooks also incorporated these arguments into her request for a new trial under Civ.R. 59. *Id*. at 15.

{¶ 9} The magistrate denied the motion for JNOV on November 22, 2022. She noted that although the summary judgment decision had concluded that the Agreement was a lease with option to purchase and not a land installment contract, it made no "factual findings" on the Medlocks' defenses to Ms. Brooks' counterclaims, including the issues of "modification and waiver." (Nov. 22, 2022 Mag.'s Decision at 8.) The magistrate noted:

> During trial, evidence was presented by Plaintiffs in support of those defenses. Plaintiffs testified that they continued making payments, including paying property taxes, after the original lease term ended in October 2017, in reliance on the conduct and representations of Defendant about Plaintiffs' purchase of the subject property. Plaintiffs also presented text messages sent by Defendant's daughter, Monica Brooks, to Plaintiff Stacey Medlock in October 2018, about arrangements being made for the closing on the property and the remaining money to be paid by Plaintiffs. The texts do not state or even imply that the option to purchase was not properly executed but focus instead on the steps to be completed to finalize the purchase.

*Id*. at 8.

{¶ 10} After quoting one of the text messages, the magistrate found that "reasonable minds could conclude that the parties waived the requirement of written notice of the exercise of the option to purchase and they could find that the parties, through their conduct, modified the agreement." *Id*. at 9. Accordingly, the magistrate denied the motion for JNOV.

{¶ 11} Ms. Brooks has appealed and she raises the following two assignments of error:

[I.] The Trial Court erred when it denied Appellant's Motion for Judgment Notwithstanding the Verdict.

[II.] The Trial Court Judge's construction of the parties' lease with an option to purchase and its provisions was the law of the case.

{¶ 12} Because the second assignment of error describes a legal issue that relates to the error described in the first assignment of error and not an independent "place in the record" containing error, the second assignment of error is not a basis for an independent ruling. *Compare* App.R. 16(A)(3) (requiring "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected" in the appellant's brief) *with* App.R. 16(A)(4) (requiring "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates"). Rather, the second assignment of error will be construed as part of the first assignment of error. *See, e.g.*, *Nelson v. State Farm Fire & Cas. Co.,* 10th Dist. No. 22AP-176, 2023-Ohio-1982, ¶ 27 (holding that "a court of appeals may construe the issues presented as assignments of error" where appellant states no assignment of error).

{¶ 13} Ms. Brooks first argues that "there was no evidence from which the jury could conclude that a modification of the Agreement was supported by new or distinct consideration," and that such consideration is necessary to modify a written contract with a no oral modification clause. (Am. Brief of Appellant at 18-19.) She also reiterates the theory raised in the motion for JNOV that the magistrate's jury instructions violated the law of the case doctrine because they "did not comport with the law declared" in the trial court's summary judgment decision. *Id.* at 33.

{¶ 14} A motion for judgment notwithstanding the verdict is governed by Civ.R. 50(B), which states that "a party may serve a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion." "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict" under Civ.R. 50(A). *Posin v. A. B. C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976). "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of

the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Id.* *See also* Civ.R. 50(A)(4) (stating standard for granting a motion for directed verdict). The question is "whether the evidence, construed most strongly in favor of appellees, is legally sufficient to sustain the verdict." *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, ¶ 23.

{¶ 15} However, Ms. Brooks' failure to file a trial transcript thwarts any appellate review of the legal sufficiency of the evidence. *Allphase Restoration & Constr. v. Youngblood*, 10th Dist. No. 15AP-75, 2015-Ohio-4043, ¶ 30 (where appellant failed to file a transcript, appellate court could not review evidence for legal sufficiency and had to "presume the validity of the denial of judgment notwithstanding the verdict"). If there is no transcript of the proceedings in the record, "there is no basis upon which this court can make any finding with respect to the evidence." *Eble v. Emery*, 10th Dist. No. 06AP-1007, 2007-Ohio-4857, ¶ 9 (affirming the dismissal of a civil protection order where the appellant failed to "cause a transcript of the proceedings to be transmitted to this court"). It is the obligation of an appellant to provide the appellate court with a transcript of the proceedings in the trial court. App.R. 9(B); *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Without a transcript to review the proceedings before the trial court, an appellate court must "presume the validity of the lower court's proceedings, and affirm." *Knapp* at 199. Thus, we presume that sufficient evidence was introduced at trial to support the factual findings stated in the jury interrogatories. This includes the finding that Ms. Brooks had waived any condition precedent to the exercise of the option in the Agreement and the finding that it had been modified, in spite of her assertion that "no evidence" in the record supported either determination. (Am. Brief of Appellant at 18.) Without a transcript, there is no way to test her assertion. And although we cannot test its sufficiency, we note that the evidence described by the magistrate in her decision overruling the motion for JNOV also contradicts the assertion that no evidence supported the jury's findings.

{¶ 16} Even if Ms. Brooks had filed a transcript, however, she never asserted a lack of consideration in the trial court as an affirmative defense to the Medlocks' claim of breach. The complaint alleged that the Medlocks complied with new terms that increased the payment amount "in order to satisfy the total * * * purchase price for the property." (Feb. 8, 2019 Compl. at ¶ 62.) Yet Ms. Brooks' Answer does not include lack of consideration as one

of the ten affirmative defenses asserted, as Civ.R. 8 requires. (Sept. 26, 2019 Answer at 1-2.) "In pleading to a preceding pleading, a party shall set forth affirmatively * * * failure of consideration, * * * and any other matter constituting an avoidance or affirmative defense." Civ.R. 8(C). Because "affirmative defenses other than those listed in Civ.R. 12(B) are waived unless they are raised in the pleadings or in an amendment to the pleadings," Ms. Brooks cannot raise it for the first time on appeal. *UAP-Columbus JV326132 v. O. Valeria Stores, Inc.*, 10th Dist. No. 07AP-614, 2008-Ohio-588, ¶ 12, citing *Jim's Steak House, Inc. v. Cleveland*, 81 Ohio St.3d 18 (1998).

{¶ 17} Furthermore, even allowing that the specifics of the Medlocks' theory of breach may have crystalized between pleading and trial, their pretrial statement put Ms. Brooks on notice that they intended to prove that the parties had agreed to amend the Agreement and that she had waived its conditions precedent to exercise of the purchase option. (Aug. 2, 2021 Joint Pretrial Statement at 2.) Ms. Brooks never moved for leave of the court to amend her answer under Civ.R. 15(A) or to conform to the evidence under Civ.R. 15(B) in order to assert lack of consideration as an affirmative defense. In addition, the jury instructions contained a detailed explanation of how "[a] contract may be modified or changed upon mutual agreement of the parties," yet Ms. Brooks' three filings of proposed jury instructions contained no mention of lack of consideration. (Feb. 18, 2022 Jury Instructions at 9.) There is no indication in the trial court record of any intent to assert lack of consideration as a defense to the claim of breach. The argument is waived.

{¶ 18} We also reject the argument that the jury instructions violated the law-of-the-case doctrine by failing to "comport" with the trial court's summary judgment decision. (Am. Brief of Appellant at 32.) The argument relies on a category error, as the doctrine has no relevance to proceedings in a trial court before judgment and appeal. "The law-of-the-case doctrine provides that legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels." *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, ¶ 1, citing *Nolan v. Nolan*, 11 Ohio St.3d 1 (1984). We reject Ms. Brooks' assertion, unsupported by any case citation, that "[t]he trial [court] was a superior court to the Magistrate when it issued its summary judgment rulings." (Am. Brief of Appellant at 31.) All proceedings prior to this appeal took place in a single forum, the trial court. Furthermore, "denial of a motion for summary

judgment generally is considered an interlocutory order" and therefore subject to reconsideration before entry of final judgment. *Stevens v. Ackman*, 91 Ohio St.3d 182, 186 (2001). *See also State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, ¶ 13, quoting *Kott Ents., Inc., v. Brady*, 6th Dist. No. L-03-1342, 2004-Ohio-7160, ¶ 50 (observing that a trial court has discretion "to reconsider a previous interlocutory order" before entry of judgment).

**{¶ 19}** Finally, the summary judgment decision made no factual findings that bound the jury. The trial court concluded that the Medlocks had submitted no undisputed evidence to support their contention that the parties had amended the Agreement, so it overruled their motion for summary judgment. (May 11, 2021 Decision at 14.) They were not entitled to judgment as a matter of law on their claim of breach. Because the evidence was in dispute, it had to be submitted to a jury. The jury considered the evidence and resolved the parties' differing interpretations of it in favor of the Medlocks. We presume the regularity of this series of events because no transcript of the trial proceedings is in the record.

**{¶ 20}** For the foregoing reasons, the two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

_____